648 So.2d 1200 (1995)
STATE FARM FIRE & CASUALTY COMPANY and Richard Nerndt, Appellants,
v.
James MIDDLETON and Anita Middleton, Appellees.
No. 94-711.
District Court of Appeal of Florida, Third District.
January 4, 1995.
Adorno & Zeder and Raoul G. Cantero, III and William S. Berk, for appellants.
Carlson & Bales and Richard M. Bales, Jr., and Julie A. Moxley; John E. Tober, for appellees.
Before SCHWARTZ, C.J., and COPE and GODERICH, JJ.
SCHWARTZ, Chief Judge.
The case presents a new wrinkle, which has been difficult to iron out, in the issues created by the effect of Hurricane Andrew on appraisal-of-loss clauses in homeowners' insurance policies. For the reasons which follow, we have concluded that the parties are bound by the appraisal clause to submit the amount of the loss to arbitration, even though it is established as a practical matter that the loss exceeds the face value of the policy.

I.
When Andrew struck, the Middletons' home was insured by a State Farm HO-3 "outstanding value" homeowners' policy which limited property damage coverage to $93,300.00. Within two weeks of the storm, State Farm advanced some $39,750.00 for emergency repairs, and, as of the present time, has paid a total of $83,723.24. Its present estimate of the total loss is $93,016.81. The plaintiffs, on the other hand, have estimates ranging from $153,835.00 to $220,497.00. The policy contains the by-now-familiar appraisal clause which provides for a *1201 disagreement as to "the amount of the loss" to be resolved by a three-person appraisal board.[1]
The present controversy arises from almost simultaneously filed cases by the Middletons and State Farm respectively. The Middletons' action sought to recover the amount, not of the face value of the policy  the insurer's estimate of $93,016.00 virtually conceded that the $93,300.00 limit was recoverable[2]  but rather, on several theories, the "actual loss" sustained, which was alleged to be considerably above that. Specifically, the Middletons claim that State Farm was guilty of fraud or negligence in failing to inform them of the availability of an alternate, HO-5, policy which would have covered the entire actual replacement cost required to repair the home, and sought reformation of the policy to reflect that term.[3] State Farm in part responded  and specifically claimed in its separate action which sought only the enforcement of the clause in question  that the appraisal clause governed the manner in which loss should be determined and the case should not proceed until that process had been accomplished. After the cases were consolidated, the trial judge denied the carrier's application for arbitration and State Farm has taken this appeal. We reverse.

II.
In deciding this case, we must consider the weight of two competing legal and practical considerations which arise out of the fact that the only real dispute between the parties is the liability of State Farm for an amount beyond the limits of the actual policy issued to the Middletons. On the one hand, it may be said that because there is no disagreement as to any matter arising under the policy itself, it is almost self-evident that the provision for the resolution of disputes contained in that policy cannot apply. 14 Couch on Insurance 2d § 50:58 (rev. ed. 1982).[4] On the other hand, State Farm points out the equally obvious fact that the actual extent of the loss  which is the subject of the appraisal clause  is the, or at least a, key issue in the case. The extent of the plaintiffs' recovery  even if they could show fraud, negligence or the right to reformation  would be governed entirely by the amount of the actual loss. Because, State Farm says, the parties have specifically agreed that that vital figure would be determined by arbitration, the parties' agreement to that effect should control. We conclude that State Farm has the better of the argument.
The underlying reason for our conclusion is the general, even overwhelming, preference in Florida for the resolution of conflicts through any extra-judicial means, especially *1202 arbitration, for which the parties have themselves contracted. Roe v. Amica Mut. Ins. Co., 533 So.2d 279, 281 (Fla. 1988) ("arbitration is a favored means of dispute resolution"); U.S. Fire Ins. Co. v. Franko, 443 So.2d 170, 172 (Fla. 1st DCA 1983) ("arbitration agreements are favored in the law"); Lapidus v. Arlen Beach Condominium Ass'n, 394 So.2d 1102, 1103 (Fla. 3d DCA 1981) ("there is a strong public policy favoring arbitration"). The treatment of appraisal clauses as binding arbitration agreements is similarly well-established. See New Amsterdam Casualty Co. v. J.H. Blackshear, Inc., 116 Fla. 289, 291, 156 So. 695, 696 (1934) (appraisal clauses "are valid and are binding upon the parties if they are appropriately invoked"); Preferred Mut. Ins. Co. v. Martinez, 643 So.2d 1101, 1102 (Fla. 3d DCA 1994) ("courts have construed appraisal provisions in insurance policies and have treated these provisions as arbitration provisions"); American Reliance Ins. Co. v. Village Homes at Country Walk, 632 So.2d 106, 107 (Fla. 3d DCA 1994) ("[same] provisions in insurance policies may be construed as agreements to arbitrate"), review denied, 640 So.2d 1106 (Fla. 1994). The principle has particular applicability in this case, in which a great deal of judicial resources which might otherwise be required in resolving the factual and legal issues involved in the fraud, negligence, and reformation issues would be saved at the threshold by a relatively swift and informal decision by the appraisers as to the amount of the loss.[5]
We are influenced, too, by the fact that the language of the appraisal clause itself does not, as do others, limit itself to determining the amount of the loss under this policy. This was the decisive factor in LaCourse v. Firemen's Ins. Co., 756 F.2d 10, 12 (3d Cir.1985), in which an automobile policy provided for arbitration when the parties "do not agree as to the amount of the damages," just as the present policy refers to a failure "to agree on the amount of the loss." In holding that this language did not restrict the damages recoverable when the policy was "stacked" with others, the court said:
[the] amount [of damages] is not measured by or restricted in any way by the policy limits. It is a factual matter completely independent of the actual amount of insurance provided by the policy. For example, a jury verdict on the amount of damages is generally determined without any knowledge of or reference to whether the defendant is insured.
[Here,] [t]he arbitration clause does not restrict the words, "amount of damages" to policy limits, or by any other fixed amount. The disputed term is not modified by any language such as "payable" or "for which it is liable under the policy."
Id. at 14 (footnote omitted); see also Early v. Providence & Wash. Ins. Co., 31 R.I. 225, 232-34, 76 A. 753, 756 (1910) ("provisions of the policy clearly contemplate an ascertainment by the appraisers of the whole loss"). Compare Fox v. Employers' Fire Ins. Co., 330 Mass. 283, 113 N.E.2d 63 (1953) (reaching opposite result when arbitration clause referred to loss "under this policy").
Indeed, it has been specifically held that binding appraisal provisions are enforceable even if the amount involved may exceed the value of the policy. Thus, in Thermo-Plastics R & D, Inc. v. General Accident Fire & Life Assur. Corp., 42 Mich. App. 418, 202 N.W.2d 703 (1972), the court held:
The possibility that the appraisers would determine an amount of damages in excess of the policy limits does not relieve Thermo-Plastics of the obligation to comply with the statutorily-prescribed procedure. If the appraisers in fact determined an amount of damages in excess of the policy limits, it would then be a question for a court to decide whether General Accident is subject to liability for the excess.
Id., 202 N.W.2d at 706 (footnote omitted).[6]
The requirement of the submission to arbitration does not, moreover, result in any *1203 injustice to the insureds, whose recovery would be essentially dependent upon the results of an arbitration process in any case. This is true because any claim for negligence or fraud depends on a showing that that conduct had proximately resulted in damage to the insured, that is, that the amount of the loss as determined by the appraisal process was more than the limits of the HO-3 policy. Putting the same thing in another legal way, any reformation of the policy, as sought by the plaintiffs, would affect only the limits of the recoverable loss. The putatively reformed policy would still contain the appraisal clause. Thus, all of the Middletons' roads lead directly to appraisal.
Accordingly, the order below denying arbitration is reversed and the cause remanded for enforcement of the appraisal clause in the policy. Although the order in which issues are determined respectively by arbitration or in judicial proceedings is ordinarily for the discretion of the trial court, see Ronbeck Constr. Co. v. Savanna Club Corp., 592 So.2d 344 (Fla. 4th DCA 1992), the considerations of judicial economy which have for the most part determined this result require that, in this case, the amount of the damages be first determined by the appraisers. The trial court is directed to require that this be done after remand.
Reversed and remanded with directions.
NOTES
[1] In its entirety, the appraisal clause provides:

If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser. Each shall notify the other of the appraiser's identity within twenty (20) days of receipt of the written demand. The two appraisers shall then select a competent, and impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire. The appraisers shall then set the amount of the loss.
[2] It is obvious that the two-hundred-odd dollar difference is de minimis. We therefore may and do consider this case as if it were conceded that the policy limits are payable and, thus, that the only real question before us is whether the amount of the actual loss in excess of that amount should be determined by the appraisers or the court.
[3] The plaintiffs also claimed damages for "intentional infliction of emotional distress" in the manner in which the carrier sought to adjust the claim. But see Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277 (Fla. 1985).
[4] The Middletons also claim that by advancing sums for repairs or otherwise, State Farm has somehow "waived" its right to appraisal-arbitration. Because, however, the carrier took no step and advanced no position inconsistent with its present assertion, there is no merit in this claim. See Preferred Mut. Ins. Co. v. Martinez, 643 So.2d 1101 (Fla. 3d DCA 1994); Coral 97 Assocs. v. Chino Elec., Inc., 501 So.2d 69 (Fla. 3d DCA 1987); U.S. Fire Ins. Co. v. Franko, 443 So.2d 170 (Fla. 1st DCA 1983). The plaintiffs' reliance on Weiss v. Insurance Co. of Pa., 497 So.2d 285 (Fla. 3d DCA 1986), is misplaced. In Weiss, the insurance company in essence made an election of inconsistent remedies when it agreed to repair the insured's vehicle but then refused to pay for the repairs and demanded an appraisal to determine the amount of the damage. No such thing occurred here.
[5] For example, a result at, or only slightly more than, the $93,300 policy limit might well result in a prompt settlement.
[6] While the rule in Minnesota is apparently to the contrary, see Oppenheim v. Fireman's Fund Ins. Co., 119 Minn. 417, 138 N.W. 777 (1912); Ohage v. Union Ins. Co., 82 Minn. 426, 85 N.W. 212 (1901), we note both that the result there is governed by the particular statutes involved and that we disagree with that holding, under which a jury determination that the loss was actually less than the limits so that arbitration had been required all along results in a total denial of recovery.