763 So.2d 524 (2000)
DADELAND SQUARE, LTD., Petitioner,
v.
Estelle GOULD, Respondent.
No. 3D99-00230.
District Court of Appeal of Florida, Third District.
July 26, 2000.
*525 Paul Morris, Coral Gables, for petitioner.
Kluger, Peretz, Kaplan & Berlin and Steve I. Silverman, Miami, for respondent.
Before COPE, GERSTEN, SORONDO, JJ.
PER CURIAM.
Dadeland Square, Ltd. appeals from the lower court's Order Granting Estelle Gould's Objection to Confirmation of Arbitration Award and Application and Motion to Vacate Arbitration Award. We treat this appeal from a non-final order as a petition for writ of certiorari, grant the writ, and quash the order under review, finding that the petitioner has established, on the record presented, a departure from the essential requirements of law.
The petitioner, Dadeland, and the respondent, Estelle Gould, are general partners of Kendall-77, Ltd. The partnership is the owner of real property located at 7700 N. Kendall Drive, Miami, FL (known as Dadeland Square or The Greenery). The partnership agreement, which contains a binding arbitration clause, provides that in the event of a qualifying offer to one partner from a third party to purchase the property, the other partner would have the right of first refusal.
Two offers to purchase the property were deemed by Gould to constitute qualifying offers. Gould notified Dadeland. Dadeland sought to exercise its right of first refusal under one of the offers, which Gould attempted to reject. Dadeland then filed a demand for expedited arbitration with the American Arbitration Association (Association). The Association appointed Kyla Lines, senior supervisor of case managers, to administer the arbitration. On May 27, 1998, Lines appointed Lawrence Saichek, Esq. to act as the sole arbitrator. Because this was an expedited arbitration, Lines scheduled a conference call with the parties' attorneys for the next day, May 28, 1998. Saichek knew counsel and parties from both sides of the dispute. Saichek also knew the Green family. Concerned that they might hold an interest in Dadeland Square, Saichek telephoned Robert Green and inquired. Green responded that he was a limited partner in the property. Saichek asked Green if he had any objection to Saichek serving as arbitrator. Green responded that he did not.
On May 28, 1998, a few minutes prior to the conference call, Saichek orally informed Lines over the telephone that he knew the Green family and that Green had a limited partnership interest in the property. Saichek also told Lines that he knew Alan J. Kluger, Gould's attorney, as well as other members of Kluger's law firm. Lines told Saichek that he could disclose this in the conference call.
Participating in the conference call were Lines, Saichek, four attorneys for Gould and an attorney for Dadeland. During the conference call, Saichek disclosed that he was close friends with Green, that he was friends with the Green family and that he had done a closing for Green. He also acknowledged that he was serving on a panel of arbitrators with Eliot C. Abbot and that he knew Howard J. Berlin and Kluger of the Kluger, Peretz, Kaplan & *526 Berlin firm. He stated he did not believe any of this would affect his impartiality. Saichek then dropped off the conference call, and Lines gave all of the attorneys the opportunity to ask her any questions about the disclosure so that she could ask Saichek without Saichek knowing which attorney was asking. She also gave them the opportunity to object confidentially to her at that point in time. Lines' understanding was that at the end of that time, both sides would consult with their clients and get back to her within the next day. None of the four attorneys representing Gould asked any questions of Lines to pose to Saichek. After the conference call, no attorney representing Gould contacted Lines by phone or in writing to ask her to pose any questions to Saichek. No attorney representing Gould objected to Saichek serving as arbitrator. Lines confirmed Saichek's disclosures in a May 28, 1998 letter to the parties, stating that Saichek disclosed that he was friends with Robert Green's family, he did a closing for Robert Green, he was serving on a panel with Eliot C. Abbot and knew Howard J. Berlin and Alan J. Kluger professionally, and he did not believe this would affect his impartiality. The letter requested that any objection to Saichek's serving as arbitrator be made that day in writing and by telephone. On June 1, 1998, Lines sent a letter to counsel stating that since there were no objections to the appointment of Saichek, the appointment was confirmed.
The parties submitted witness lists. Gould's list included Lawrence Suchman and Stuart Marcus. Saichek disclosed that he knew Suchman personally and did accounting work for the Suchman family's accountant. Saichek also disclosed that he knew Marcus and that he was representing Marcus' family in a transactional matter. On June 2, 1998, Lines faxed these additional disclosures to the attorneys and afforded them an opportunity to object. Neither Dadeland nor Gould objected. On June 3, 1998, Lines sent a letter to counsel for the parties stating that since there were no objections to Saichek's additional disclosures, she was reconfirming Saichek's appointment. On June 3, 1998, the arbitration hearing was held, and Saichek eventually entered an award on June 8, 1998, finding in favor of the position asserted by Dadeland and against Gould. At no time prior to the rendition of the arbitrator's award did any party object to Saichek serving as arbitrator.
After Dadeland filed its complaint for confirmation of the arbitration award, Gould filed her Objection to Confirmation of the Arbitration Award and Application and Motion to Vacate Arbitration Award pursuant to section 682.13(1)(a) and (b), Florida Statutes (1997). Gould's Motion to Vacate alleged that Saichek's required disclosure was materially deficient because the disclosure failed to include any material facts regarding his long-standing personal relationship with Green. Gould alleged that, through counsel, she found out after the arbitration award became public that Saichek and Green had a personal relationship for more than fifteen years.
Gould then filed a written objection with the Association on June 11, 1998. By letter on June 12, 1998, Dadeland's counsel confirmed the accuracy of the fifteen-year relationship between Saichek and Green. The Association declined to proceed on Gould's objection, and Dadeland filed its complaint to enforce the arbitrator's award. Gould filed a counterclaim and was granted leave to conduct discovery.
The parties then engaged in discovery regarding Saichek's disclosure, the guidelines and requirements of the Association governing an arbitrator's disclosures, and the long-standing relationship between Saichek and Green. Gould deposed Saichek, Lines and Green. Green testified that Saichek is one of his closest friends.
A hearing on Gould's Motion to Vacate was held before the lower court on January 4, 1999. Over Dadeland's objection, Gould was permitted to proffer testimony rather than present the witnesses who were present. Dadeland sought to present *527 the live testimony of Lines, Green and Saichek. The trial judge instructed Dadeland to proffer testimony. The testimony of Lines and Green was proffered. When Saichek's testimony was proffered, the court determined that material facts were not in dispute, allowing him to rule without an evidentiary hearing. On January 15, 1999, the lower court entered an Order granting Gould's Motion to Vacate, vacating the arbitrator's June 8, 1998 award and reserving jurisdiction to enter any further orders. Dadeland then filed this appeal.
Dadeland contends that the trial court departed from the essential requirements of the law in various ways. We find one of them dispositive. Dadeland claims that the trial court departed from the essential requirements of the law in granting Gould's motion to vacate the arbitration award because Gould waived the opportunity to question the arbitrator about his disclosed relationships and waived any objection to the arbitrator until after Gould had suffered an adverse arbitration award. We agree.
This Court has acknowledged and it is well-settled in federal courts that objections to the qualifications of arbitrators must be timely made and that the unsuccessful party in an arbitration proceeding cannot raise such an objection for the first time after the award is made. See Rios v. Tri-State Ins. Co., 714 So.2d 547, 551 (Fla. 3d DCA 1998)(relying on Code of Ethics for Arbitrators in Commercial Disputes, Canon II, Introductory Note)("When parties, with knowledge of a person's interests and relationships, nevertheless desire that individual to serve as an arbitrator, that person may properly serve."); AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. International Dev. and Trade Serv., Inc., 139 F.3d 980 (2d Cir.1998)(where party had knowledge of facts indicating that arbitration tribunal was corrupt prior to commencement of arbitration hearings but remained silent until adverse award was rendered, party waived its objection); Health Servs. Management Corp. v. Hughes, 975 F.2d 1253 (7th Cir.1992)(objection of losing party in arbitration to award on basis of arbitrator's prior business relationships with prevailing party was waived as untimely); Swift Indep. Packing Co. v. District Union Local One, 575 F.Supp. 912, 916 (N.D.N.Y.1983)("In short, plaintiff made a calculated decision not to object to the alleged bias of Arbitrator Procopio and now seeks to avoid the consequences of what proves to have been a tactical error. Plaintiffs' `belated cry of "bias" cannot now form a basis for setting aside the award; its silence constituted a waiver of this objection.' "[citation omitted]); Ilios Shipping & Trading Corp., S.A. v. American Anthracite & Bituminous Coal Corp., 148 F.Supp. 698, 700 (S.D.N.Y.), affirmed, 245 F.2d 873 (2d Cir. 1957)("Where a party has knowledge of facts possibly indicating bias or partiality on the part of an arbitrator he cannot remain silent and later object to the award of the arbitrators on that ground. His silence constitutes a waiver of the objection."). It is clear that under the facts of this case, Gould made a calculated decision not to object to the arbitrator or inquire into the details of the arbitrator's relationships with any parties or counsel because the arbitrator knew Gould's counsel and also knew two of Gould's witnesses.
Gould was given the opportunity to pursue questioning of the arbitrator during the pre-arbitration conference call in which all parties participated, but Gould declined. As previously noted, both parties knew the arbitrator and had an interest in having him appointed. The parties were put on notice regarding Saichek's disclosures and decided to take their chances and not conduct further inquiry or delve into the degree of the relationship.
Gould further claims that the arbitrator did not make written disclosures in compliance with the Association's procedures. Gould made this objection after the arbitration award was entered in favor of Dadeland. Again, for the reasons previously *528 discussed, we believe this contention was raised too late. Saichek's disclosure triggered a responsibility on the part of the attorneys to question further.
In sum, we find that because no questions were posed to Lines and no objections were made by Gould's attorneys when the opportunities to do so presented themselves prior to the arbitration proceeding, there is no doubt that under these facts, Gould waived her right to object to the arbitrator.
Petition granted; order quashed.