AAOT FOREIGN ECONOMIC ASSOCI-
ATION (VO) TECHNOSTROYEX-
PORT, Petitioner—Appellee,

v.

INTERNATIONAL DEVELOPMENT
AND TRADE SERVICES, INC.,
Respondent—Appellant.

Docket No. 97–9075.

United States Court of Appeals,
Second Circuit.

Argued Feb. 24, 1998.

Decided March 23, 1998.

John J. Buckley, Jr., Washington, DC
(Emmet T. Flood, Williams & Connolly,
Washington, DC, Elkan Abramowitz, Ed-
ward M. Spiro, Morvillo, Abramowitz, Grand,
Iason & Silverberg, New York City, of coun-
sel) for Respondent–Appellant.

Kim Koopersmith, New York City (Steven
M. Pesner, Ariane D. Austin, Akin, Gump,
Strauss, Hauer & Feld, New York City, Jay
D. Zeiler, Gregory P. Laird, Akin, Gump,
Strauss, Hauer & Feld, Brussels, Belgium, of
counsel), for Petitioner–Appellee.

Before: WINTER, Chief Judge, PARKER,
Circuit Judge, and SCHWARZER, Senior
District Judge.*

SCHWARZER, Senior District Judge:

We must decide whether the District
Court for the Southern District of New York
(Koeltl, J.) erred in confirming two interna-
tional arbitration awards rendered by an al-
legedly corrupt tribunal where the losing
party, knowing the relevant facts, chose to
participate fully in the proceedings without
disclosing those facts until after the adverse
awards had been rendered.

In 1991 and 1992 appellant International
Development and Trade Services, Inc.
("IDTS") entered into contracts for the pur-
chase of non-ferrous metals from appellee
AAOT Foreign Economic Association (VO)
Technostroyexport ("Techno"). Disputes
arose over IDTS's performance under the
contracts. The disputes were submitted to
arbitration pursuant to the contracts' arbitra-
tion clauses which provided for arbitration
before the International Court of Commer-
cial Arbitration of the Chamber of Commerce
and Industry of the Russian Federation in
Moscow. Hearings were held before a tribu-
nal appointed by the Arbitration Court which
rendered awards in favor of Techno of ap-
proximately $200 million. Techno filed a pe-
tition in the district court to confirm the

* Honorable William W Schwarzer, Senior United
States District Judge for the Northern District of
California, sitting by designation.

awards under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 ("Convention"), as implemented by 9 U.S.C. § 201–08. IDTS opposed enforcement of the awards under Article V(2)(b) of the Convention as "contrary to the public policy" of the United States.[1] The district court rejected IDTS's contention and entered judgment confirming the awards. This appeal followed. The district court had subject matter jurisdiction under 9 U.S.C. § 201 and 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

The factual showing on which IDTS founded its opposition may be briefly summarized. Following the initiation of the arbitration proceedings, IDTS sent an interpreter—Tamara Sicular—to Moscow to file papers, clarify the status of the cases and gain an understanding of the procedures that would be followed. On July 14, 1993, Sicular met with Sergey Orlov, the Secretary of the Arbitration Court, and his superior at the Chamber of Commerc   According to IDTS, Sicular, on her own initiative and to test the integrity of the court, asked Orlov whether the court could be "bought." Orlov responded affirmatively and offered to "fix" the cases for IDTS in exchange for a substantial payment. His superior later that day told Sicular he would personally assist IDTS "sort out" the arbitration. On the next day, Orlov presented Sicular with his plan which called for a payment of $1 million for which he would rig the tribunal. There followed a series of communications with Orlov over the next two months in which Sicular ostensibly sought to gather further evidence and establish that the Arbitration Court and its officials were corrupt. They ended inconclusively in Sep-

tember 1993, without any payment being made. Sicular passed all of this information on to IDTS president Edith Reich prior to the commencement of any arbitration hearings. The Arbitration Court held hearings beginning in December 1994 and ending in September 1995. IDTS, represented by several attorneys, participated actively. The final awards in favor of Techno were rendered in March 1996.

In November 1996, Techno filed its petition to confirm the awards in the district court. In its opposition to the petition, IDTS for the first time disclosed the offer to bribe the Arbitration Court—the sting, as IDTS describes it—in support of its contention that enforcement of an award rendered by a corrupt tribunal would be contrary to the public policy of the United States. The district court determined that IDTS's allegations failed to establish that the Arbitration Court was not impartial in these cases;[2] that the use of the public policy exception is not appropriate where one party to an arbitration has initiated the situation itself prior to the commencement of the arbitration hearing, participated thereafter fully in the arbitration, received an unfavorable award, and then alleges that the arbitral proceeding was corrupt as a means of avoiding an unfavorable result; and that IDTS waived its right to assert the public policy exception where it had knowledge of the facts but remained silent until an adverse award was rendered. Because we agree with the court's third ground, it is unnecessary for us to consider whether application of the public policy exception would be appropriate in this case. We also need not address whether IDTS is estopped from arguing that the Arbitration

**1.** Article V.2(b) provides in relevant part: "Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that: ... The recognition or enforcement of the award would be contrary to the public policy of that country."

On appeal, IDTS also argues that it was denied due process, relying on Article V.1(b) which provides that recognition and enforcement may be denied when a party "was otherwise unable to present its case." Although IDTS did raise a due process concern to the district court in a sur-reply memorandum, it did so only as part of a

response to Techno's waiver argument and did not squarely present to the district court the argument it now presents to this Court. Therefore, IDTS did not properly raise this point in the district court; in any event, we do not reach it.

**2.** IDTS contends that the district court ignored its corruption challenge and instead addressed partiality, an issue not raised. It argues that a tribunal may be found to be corrupt without regard to whether it is shown to be partial. Our disposition of this appeal makes it unnecessary to address this point.

Court was corrupt because it initiated the bribe. Consequently, we do not reach the issue of whether IDTS authorized Sicular to offer the bribe.

■ The settled law of this circuit precludes attacks on the qualifications of arbitrators on grounds previously known but not raised until after an award has been rendered. "Where a party has knowledge of facts possibly indicating bias or partiality on the part of an arbitrator he cannot remain silent and later object to the award of the arbitrators on that ground. His silence constitutes a waiver of the objection." *Ilios Shipping & Trading Corp. v. American Anthracite & Bituminous Coal Corp.,* 148 F.Supp. 698, 700 (S.D.N.Y.), *aff'd,* 245 F.2d 873 (2d Cir.1957) (per curiam); *see also Cook Industries, Inc. v. C. Itoh & Co. (America) Inc.,* 449 F.2d 106, 107–08 (2d Cir.1971) ("Appellant cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first."); *Swift Indep. Packing Co. v. District Union Local One, United Food & Commercial Workers Int'l Union,* 575 F.Supp. 912, 916 (N.D.N.Y.1983) (applying waiver doctrine where facts discovered after close of hearing but not disclosed until after rendering of award).

This law of waiver controls the outcome of this appeal. It is undisputed that IDTS had knowledge of concrete facts possibly indicating the corruption of the Arbitration Court— namely, the apparent willingness of some members of the Arbitration Court to take bribes. Despite this knowledge, IDTS remained silent. Accordingly, it cannot now object to the award based on these facts.

IDTS contends that it cannot be charged with waiver because it did not voluntarily and intentionally waive its right to a corruption-free tribunal. It argues that any attempt to seek relief would have been futile: from the tribunal because it was corrupt, from the Arbitration Court because its officials were corrupt and because its rule precluded it, and from the Russian courts because the applicable law did not permit it. We express no view on the validity of these contentions.

But even if they are valid, it was incumbent on IDTS to notify opposing counsel. It is no answer, as IDTS claims, that it was unlikely that Techno would agree to the charge of corruption of the tribunal or to surrender any perceived resulting advantage. Had Techno insisted in the face of IDTS's charges on proceeding with the arbitration as arranged, IDTS would have preserved its objections and been free to raise them in any later confirmation proceeding. Instead IDTS tried to put the case in a posture in which, as the district judge aptly characterized it, "Heads I win, tails you lose."

We therefore conclude that IDTS waived whatever objections it had to the tribunal and affirm.