Rel: October 17, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of Southern Reporter. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in <u>Southern Reporter</u>.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

––––––––––––––––––––––

### SC-2025-0173

––––––––––––––––––––––

**Restore with Apex, Inc., d/b/a Apex Restoration DKI**

**v.**

**Zachary Rocca**

**Appeal from Jefferson Circuit Court**
**(CV-22-903793)**

PER CURIAM.

Restore with Apex, Inc., d/b/a Apex Restoration DKI ("Apex"), appeals from the denial by operation of law of its motion to vacate a judgment on an arbitration award entered in favor of Zachary Rocca. We affirm.

Facts and Procedural History

In 2021, Rocca's house and barn were damaged by a downed tree and hail. Through his insurance company, Rocca hired Apex to repair his property. The agreement between Rocca and Apex included an arbitration provision that required the parties to submit any claims to the American Arbitration Association ("the AAA").

In August 2021, Rocca "signed a contract with Pack2Normal to pack up, move out, and store the Rocca family's household contents during the reconstruction work and to return or 'pack back,' the contents at the end of the work." Apex asserted that Pack2Normal was a separate company. Rocca testified that, when he went to Apex's office in Tullahoma, "he saw that both companies had offices in the same building, and they shared senior management."

Pack2Normal "'packed out'" Rocca's household contents on September 18, 2021. It was scheduled to return those contents on October 16, 2021. Apex's contractor started work on Rocca's property on or about September 28, 2021. After experiencing continued problems with Apex's contractor, which included defective work, Rocca told Apex to stop working. On October 15, 2021, Rocca subsequently met with

Apex's representatives in Huntsville. During that meeting, the parties agreed to terminate the contract and Rocca stated that he would finish the work on his own. Korby Holcomb, Apex's regional manager, prepared a letter agreement to memorialize the agreements made during the meeting. Rocca ultimately signed the letter agreement.

Paragraph 7 of the letter agreement referenced three checks that Rocca had endorsed for payment to Apex "for the work that has been completed." The letter agreement provided that those three checks would be sent to Rocca's mortgage company for reissuance to Apex and that, if the reissued checks were mailed to Rocca, he would immediately provide those checks to Apex.[1] It also provided that certain additional checks Rocca was expected to receive would be endorsed and submitted to Apex. The letter agreement further provided that Apex would purchase metal "to replace barn metal that was initially installed incorrectly." It also provided that Apex would submit a supplemental request for funds from Rocca's insurer.

---

[1]The arbitrator concluded that the third check referenced in paragraph 7 "was not issued for Apex reconstruction work. It was issued for Rocca's pack out/storage/and pack back costs."

Pack2Normal did not return the contents on October 16, 2021. Rocca subsequently contacted Pack2Normal to ask where his property was. An individual employed by Pack2Normal told Rocca to contact Holcomb. When Rocca telephoned Holcomb, Holcomb told him that he could not have his contents back until Apex was paid in full. Rocca stated that Apex did not disclose that condition during their meeting. Additionally, the letter agreement did not refer to that condition. Evidence was also presented indicating that Holcomb had directed Rocca to have the cashier's check for Pack2Normal's charges made payable to Apex and that Rocca had personally delivered that check to Apex.

In April 2022, Apex filed a demand for arbitration with the AAA, asserting a breach-of-contract claim. The breach-of-contract claim was based on Apex's assertion that Rocca's mortgage company had reissued the three checks referenced in paragraph 7 of the letter agreement to Rocca and that Rocca had deposited that money into his own account. Rocca, then representing himself, filed an answer and a counterclaim alleging breach of contract, fraud, extortion, and conversion.

The AAA provided both parties with a list of 10 arbitrators and asked each party to strike any arbitrators to whom they objected and

4

then rank the remaining ones in order of preference. Rocca submitted a ranked list, placing Walter J. Sears III at the top.[2] Apex, meanwhile, indicated that it had "no preference" on arbitrators. Consequently, the AAA appointed Sears ("the arbitrator") and gave the parties his conflict-of-interest disclosure form. That form indicated, among other things, that the arbitrator had never represented a party to the arbitration, that he had no connections to any of the parties, and that he was unaware of any information that would cast doubt on his partiality. After neither party objected to the arbitrator's appointment or his disclosure form, the AAA confirmed his appointment.

The arbitrator then distributed a scheduling order and set an evidentiary hearing for October 2022. In his order, the arbitrator noted that all deadlines would be "strictly enforced." Just over a month before the hearing, Apex's new counsel filed a notice of appearance. In an email, new counsel requested a "brief continuance" so that he could adequately prepare for the hearing. Rocca filed an objection to a continuance. The

---

[2]Rocca indicated that he had selected Sears, a partner at a Birmingham-based law-firm, because he was the closest geographic option. Rocca's brief at 11.

arbitrator denied the request for a continuance, adhering to the original deadlines set forth in the scheduling order.

After the hearing, the arbitrator entered his final award ("the arbitration award") in which he concluded that Rocca had overpaid Apex, that Apex had breached the letter agreement by failing to purchase the metal for the barn, and that Apex -- through its control of Pack2Normal -- had converted Rocca's property. Accordingly, the arbitrator awarded Rocca $160,928.35, which included punitive damages due to Apex's "willful and unlawful retention of Rocca's household goods." He also stated that 100% of the administration fees of the AAA and the compensation of the of the arbitrator shall be borne by Apex and that Apex "shall reimburse the sum of $12,510.00 representing that portion of said fees and expenses of the apportioned costs previously incurred by Rocca."

Apex filed a notice of appeal in the Jefferson Circuit Court. Rocca then filed a motion to enter the arbitration award as a final judgment. On September 19, 2023, the circuit court entered a purported "Order of Final Judgment," which it amended on September 21, 2023.

6

Apex filed a motion to vacate the purported judgment on the arbitration award pursuant to Rule 59, Ala. R. Civ. P. Apex first asserted that the arbitrator's law firm had previously represented Apex in unrelated matters and that that representation had resulted in a fee dispute between Apex and the arbitrator's law firm. Apex asserted that "the arbitrator's blatant failure to disclose his law firm's prior representation of Apex as well as the dispute between his law firm and Apex over the amount of legal fees creates a reasonable impression of partiality and mandates that the arbitration award be vacated." Next, Apex argued that the arbitrator's denial of its request for a continuance "amounted to misconduct under applicable law." Apex also argued that the arbitrator improperly awarded compensatory and punitive damages on Rocca's conversion claim. Apex's argument was based on its assertion that the arbitrator had "concluded that Apex had converted Rocca's personal belongings despite the fact that Rocca's personal belongings were being stored by an entirely separate company, Pack2Normal, LLC, pursuant to an entirely separate written agreement while restoration work was being performed on Rocca's residence." (Emphasis in original.) Finally, Rocca argued that the arbitrator had improperly calculated

7

compensatory and punitive damages. The circuit court conducted a hearing on Apex's motion.

On February 28, 2024, Apex filed a notice of appeal in this Court, asserting that its motion to vacate had been denied by operation of law. That appeal was docketed as case number SC-2024-0124. This Court subsequently entered an order to show cause as to why the appeal should not be dismissed as being premature, noting that it did not appear that the circuit clerk had entered the arbitration award "'as the final judgment of the court' as required by Rule 71B(f), Ala. R. Civ. P.," and that "a circuit court cannot rule on a motion to vacate an arbitration award until the clerk of the circuit court has entered the judgment contemplated by Rule 71B(f)." After the parties filed their responses to the show-cause order, this Court, on October 15, 2024, issued an order dismissing the appeal in case number SC-2024-0124 for lack of jurisdiction.

On October 19, 2024, the circuit court purported to enter an order denying Apex's motion to vacate. On October 25, 2024, Rocca filed a "Plaintiff's Unopposed Motion for Order Directing the Clerk to Enter the Arbitration Award as a Final Judgment Under Ala. R. Civ. P. 71B." On

8

that same date, the circuit court entered an order directing the circuit clerk to enter the arbitration award as a final judgment. On November 7, 2024, the circuit clerk entered the arbitration award as a final judgment.

On November 15, 2024, Rocca filed a motion to vacate the clerk's entry of the final judgment based on clerical errors in the judgment. Ultimately, the motions to vacate filed by Apex and Rocca were denied by operation of law.[3] This appeal followed.[4]

---

[3]Although the circuit court entered the October 19, 2024, order purporting to deny Apex's motion to vacate, the circuit clerk had not entered the award as a final judgment at that time. "[B]ecause the award had not yet been entered as the judgment of the circuit court, there actually was no judgment that formed the basis for the motion to vacate." Alabama Psychiatric Servs., P.C. v. Lazenby, 292 So. 3d 295, 298 (Ala. 2019). However, Apex's motion to vacate quickened, and thus became ripe for a decision by the circuit court, when the circuit clerk entered the arbitration award as a final judgment on November 7, 2024. See id. See also Wynlake Residential Ass'n, v. Hulsey, 358 So. 3d 387 (Ala. 2021).

[4]Rocca filed a notice of appeal for a cross-appeal, which was docketed as case number SC-2025-0202. In his cross-appeal, Rocca asserted that there were errors in the circuit clerk's order entering the arbitration award as a final judgment and in the case-action summary. This Court subsequently remanded the case by order for the circuit clerk to correct those clerical errors. On remand, the circuit clerk corrected those clerical errors. Because Rocca has received the relief he had requested, this Court has issued an order dismissing his cross-appeal in case number SC-2025-0202 as moot.

Standard of Review

When reviewing the confirmation of an arbitration award, "this Court reviews questions of law de novo and findings of fact for clear error." Escapes! To the Shores Condo. Ass'n v. Hoar Constr., LLC, 381 So. 3d 424, 428 (Ala. 2023).

Analysis

On appeal, Apex argues that the circuit court should have granted its motion to vacate the judgment on the arbitration award for three reasons. First, it contends that the arbitrator's failure to disclose his law firm's past representation of Apex in unrelated matters and the resulting fee dispute between Apex and the arbitrator's law firm created a reasonable impression of partiality. Second, Apex says that the arbitrator committed misconduct by denying its motion for a continuance. Finally, Apex argues that the arbitrator committed misconduct and exceeded his powers by misapplying Alabama law. None of those arguments have merit.

The Federal Arbitration Act ("the FAA"), 9 U.S.C. § 1 et seq., allows courts to vacate arbitration awards only in "limited" circumstances. Taylor v. Methodist Home for the Aging, 387 So. 3d 1080, 1082-83 (Ala.

2023).[5]  As relevant here, courts "may" vacate an award if "there was evident partiality or corruption in the arbitrator[]," the arbitrator was "guilty of misconduct," or the arbitrator "exceeded [his or her] powers."  9 U.S.C. § 10(a)(2)-(4).

A. Alleged Conflict of Interest

Apex first argues that the circuit court should have granted its motion to vacate because the arbitrator's failure to disclose his law firm's prior representation of Apex in unrelated matters and the resulting fee dispute between Apex and the arbitrator's law firm created a reasonable impression of partiality.

The problem with Apex's argument is that it never objected to the arbitrator's appointment during the arbitration proceedings.  Apex waited until after the proceedings were over and the arbitrator had

---

[5]Although Apex mentions the Alabama Arbitration Act, § 6-6-1 et seq, Ala. Code 1975, in passing, it does not make any arguments about that act's effect in this case; instead, Apex's arguments for vacating the judgment on the arbitration award are premised only on the FAA and precedent applying the FAA.  Because "it is not the function of this Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument," we do not address the Alabama Arbitration Act's application.  Dykes v. Lane Trucking, Inc., 652 So. 2d 248, 251 (Ala. 1994).

released his order to object to his appointment. But Apex cannot wait until it has "received an unfavorable award" to raise an issue that it could have raised earlier. J. Don Gordon Constr., Inc. v. Brown, 196 So. 3d 228, 233 (Ala. 2015); see also Tucker v. Ernst & Young, LLP, 159 So. 3d 1263, 1277 (Ala. 2014) (rejecting a party's argument for vacating an arbitration award because the party had failed to timely raise the issue for the arbitrator). As our sister courts at both the state and federal level have consistently recognized, "when 'a party has knowledge of facts possibly indicating [an ethical problem tainting the arbitration proceedings] he cannot remain silent and later object to the award of the arbitrators on that ground. His silence constitutes a waiver of the objection.'" Técnicas Reunidas de Talara S.A.C. v. SSK Ingenería y Construcción S.A.C., 40 F.4th 1339, 1345 (11th Cir. 2022) (quoting AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. International Dev. & Trade Servs., Inc., 139 F.3d 980, 982 (2d Cir. 1998)).[6] Accordingly, a trial court may not vacate

---

[6]See also Fidelity Fed. Bank, FSB v. Durga Ma Corp., 386 F.3d 1306, 1313 (9th Cir. 2004) (holding that a party contesting an arbitration award waives its objection to a potentially conflicted arbitrator when that party has constructive knowledge of a potential conflict but fails to object before the arbitration decision); Dadeland Square, Ltd. v. Gould, 763 So. 2d 524, 527 (Fla. Dist. Ct. App. 2000) (holding that the party contesting an arbitration award waived its objection to a potentially conflicted

an arbitration award based on grounds that could have been, but were not, raised during the arbitration proceedings.

Apex knew about its unhappy relationship with the arbitrator's law firm because it had an unresolved fee dispute with the firm before it filed its demand for arbitration and before the arbitrator conducted the proceedings. When the time came to select an arbitrator, Apex stated that it had "no preference" even though Rocca had ranked the arbitrator -- who had listed his longtime employment at the firm on his resume --

---

arbitrator by failing to timely object to that arbitrator before the award was issued when the party knew of the basis for that objection beforehand); T.A.H. Gen. P'ship v. Southwest. Radiographics, 805 P.2d 1188, 1189-90 (Colo. App. 1991) (holding that the party contesting an arbitration award waived its objection to a potentially conflicted arbitrator by failing to object to the arbitrator before the award was received when the party had information regarding the potential conflict beforehand and waived its right to question the arbitrator regarding that matter); Fort Hill Builders, Inc. v. National Grange Mut. Ins. Co., 866 F.2d 11 (1st Cir. 1989) (holding that the party contesting an arbitration award waived its argument that the arbitrator demonstrated evident partiality by failing to timely object to that arbitrator before the award was issued when the party knew of the basis for that objection beforehand); Graphic Arts Int'l Union, Local 97-B v. Haddon Craftsmen, Inc., 489 F. Supp. 1088, 1093 (M.D. Penn. 1979) (holding that "a party may not await an adverse award before asserting objections on grounds of which he had knowledge prior to the award"); Chicago, Rock Island & Pacific Ry. v. Union Pacific R.R., 254 F. 235, 238 (8th Cir. 1918) (holding that the party contesting an arbitration award waived its objection to a conflicted arbitrator by failing to timely object to that arbitrator before the award was issued when the party knew of the conflict beforehand).

as his first choice. Apex had plenty of time to object to the arbitrator's appointment but did not do so.

To avoid this preservation problem, Apex argues that it did not have knowledge of the arbitrator's supposed partiality at the time of his appointment. That is because, according to Apex, the officer managing the dispute with Rocca -- COO James Driver -- did not have personal knowledge that the arbitrator's law firm had previously represented Apex; only the company's CEO, Greg Driver, knew about the relationship. And because James did not know about Apex's connection with the arbitrator's law firm, Apex argues, the company as an entity did not know.

That argument runs headlong into the well-established rule that "a corporation is held responsible for the knowledge acquired by its agents while acting within the scope of their employment," Birmingham Boys' Club, Inc. v. Transamerica Ins. Co., 295 Ala. 177, 180, 325 So. 2d 167, 169 (1976). Greg was acting within the scope of his duties as CEO when he hired the arbitrator's law firm to represent Apex. Thus, Apex cannot profess ignorance as an entity simply because one of its other officers did not know about its prior dealings with that firm. Because Greg knew

14

that the arbitrator's law firm had previously represented Apex when the arbitrator was appointed, Apex was "bound by [Greg's] knowledge." Central of Georgia Ry. v. Joseph, 125 Ala. 313, 319, 28 So. 35, 37 (1900). Consequently, Apex cannot challenge the arbitrator's appointment after the fact.

### B. Denying a Continuance

Next, Apex argues that the circuit court erred in denying its motion to vacate because, Apex says, the arbitrator committed misconduct by denying its request for a continuance. Section 10(a)(3) of the FAA allows courts to vacate an arbitration award if the arbitrator committed misconduct, such as "refusing to postpone the hearing, upon sufficient cause shown."

But § 10(a)(3) is not a catchall provision that allows parties to invalidate arbitration proceedings any time an arbitrator declines to postpone an arbitration hearing. The misconduct alleged "must relate to whether a party was afforded a fundamentally fair hearing." Cavalier Mfg., Inc. v. Gant, 143 So. 3d 762, 770 (Ala. 2013).

> "To establish misconduct, the party moving for vacatur must show that there was no reasonable basis for the arbitrator's refusal to postpone the hearing. See Johnson v. Directory Assistants, Inc., 797 F.3d 1294, 1301 (11th Cir. 2015). In

15

deciding whether there was any reasonable basis for an arbitrator's decision to refuse a request for a postponement, we are mindful of federal policy favoring the 'expeditious handling' of arbitration cases, and also that a rescheduled hearing would have to not only 'meet the convenience of both parties and their witnesses,' but the convenience of the arbitrator as well. Schmidt v. Finberg, 942 F.2d 1571, 1574 (11th Cir. 1991).

"We may vacate an award on these grounds only if the arbitrator's choice 'prejudice[d] the rights of the parties and denie[d] them a fair hearing.' Robbins v. Day, 954 F.2d 679, 685 (11th Cir. 1992), disapproved on other grounds by First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995). Prejudice might occur when, for example, the arbitrator's choice not to postpone a hearing entirely prevents a party from presenting a key witness' material, noncumulative testimony. See Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20-21 (2d Cir. 1997)."

CM S.E. Texas Houston, LLC v. CareMinders Home Care, Inc., 662 F. App'x 701, 704 (11th Cir. 2016).

In his order denying Apex's request, the arbitrator noted:

"Apex waited over two months after the [p]reliminary [h]earing to change counsel and then to ask for more time 'to adequately prepare for the final hearing.' Rocca's objection is based on how long he and his family have been waiting 'for an answer and finalizations.'"

The arbitrator also pointed out that "The Report of Preliminary Hearing and Scheduling Order provides, 'All deadlines stated herein shall be strictly enforced.'" Under these circumstances, Apex has not

16

demonstrated that there was no reasonable basis for the arbitrator's denial of its request for a continuance. Additionally, Apex has not alleged that the arbitrator's denial of its motion for a continuance caused it any prejudice. See Cavalier Mfg., 143 So. 3d at 770 (noting that the challenging party must show that the alleged misconduct prejudiced its rights). Apex states that the denial did not "allow counsel additional time to adequately prepare for and proficiently represent Apex in the final arbitration hearing." Apex's brief at 37. But aside from this conclusory statement, Apex does not point to any new legal theory it would have raised or additional evidence that it would have presented if the arbitrator had postponed the evidentiary hearing. As a result, Apex has failed to demonstrate that the arbitrator committed misconduct by denying its request for a continuance.

C. Misapplying Alabama Law

Finally, Apex argues that the circuit court should have vacated the judgment on the arbitration award because, it says, the arbitrator was "guilty of misconduct" under § 10(a)(3) of the FAA and "exceeded [his] powers" under § 10(a)(4) of the FAA. Apex asserts that the arbitrator "exceeded his powers and committed gross misconduct that prejudiced

17

Apex's rights by blatantly disregarding the most basic principles of Alabama law regarding the tort of conversion, the measure of damages therefor[], and punitive damages." Apex's brief at 39-40. Specifically, Apex argues that the arbitrator committed misconduct because it held Apex liable for the conversion of Rocca's property "despite Apex never having possession or control of Rocca's personal property" Id. at 41. It also argues that the arbitrator's calculation of compensatory damages for conversion did not comply with Alabama law. In effect, Apex contends that the arbitrator's alleged legal error was so severe that it requires vacatur of the judgment on the arbitration award.

Our Court addressed precisely this kind of argument in Cavalier Manufacturing. In that case, a party challenging an arbitration award under §§ 10(a)(3) and (4) of the FAA argued that "the arbitrator failed to correctly apply the law and, in fact, exhibited a manifest disregard of the law." Cavalier Mfg., 143 So. 3d at 770. This Court rejected that argument and held that "there is no misconduct, misbehavior, or exceeding of powers" if an arbitrator simply "might have decided the issue incorrectly." Id. Here, at most, Apex contends that the arbitrator incorrectly applied Alabama law regarding conversion. Under Cavalier

18

Manufacturing, that is neither misconduct nor an act in excess of the arbitrator's powers as an arbitrator.

<u>Conclusion</u>

For the above-stated reasons, Apex has failed to demonstrate that the circuit court erred when it allowed Apex's motion to vacate to be denied by operation of law. Accordingly, we affirm the circuit court's judgment.

AFFIRMED.

Stewart, C.J., and Shaw, Wise, Bryan, Mendheim, Cook, McCool, and Lewis, JJ., concur.

Sellers, J., concurs in the result.